UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MICHELLE ANN ASHCRAFT, ) | |
| ) | |
| Plaintiff, ) | 3:11-CV-00383-LRH-WGC |
| ) | |
| v. ) | |
| ) | ORDER |
| WHITE PINE COUNTY HOSPITAL ) | |
| DISTRICT, d/b/a WILLIAM B. RIRIE ) | |
| HOSPITAL et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This is an employment discrimination suit. Before the court is defendant White Pine County Hospital District's ("WPCHD's") Motion for Summary Judgment (#50[1]). Plaintiff Michelle Ann Ashcraft has responded (#51), and WPCHD has replied (#55). Also before the court is WPCHD's Motion to Dismiss for Failure to Comply with a Court Order (#44). Ashcraft has untimely responded (#45) and WPCHD has replied (#46).

**I.   Facts and Procedural History**

Ashcraft began working for WPCHD as a data processing clerk in September 2000. (WPCHD's Motion for Summary Judgment ("MSJ") #50, Ex. 4, p. 123:8-10.) Shortly after beginning her job, she was diagnosed with multiple sclerosis ("MS"), a degenerative disease. By

---

[1] Refers to the court's docket entry number.

1  December 2001, WPCHD knew of Ashcraft's diagnosis. (*Id*. at Ex. 4, p. 123:17-22.) Despite this
2  knowledge, Ashcraft received raises and promotions throughout her time at WPCHD, ultimately
3  landing as WPCHD's acting CFO in January 2008. (*Id*. at Ex. 4, p. 130:5-25.)

4  Ashcraft had hoped to become WPCHD's permanent CFO, but that position was given to
5  Michael Layton in June 2008. (*Id*. At Ex. 4, p. 134:15-18; *Id*. at Ex. 6, p. 25:2-5.) Ashcraft returned
6  to her old position as hospital Controller. (*Id*. at Ex. 4, p. 133:4-5.) From that point on, relations
7  between Ashcraft and Layton were strained. (*Id*. at Ex. 4, pp. 135-37.)

8  In May 2009, Layton gave Ashcraft a mostly positive performance evaluation, noting,
9  however, that Ashcraft needed to "[c]omplete assignments in a timely manner." (*Id*. at Ex. 12, p.
10 WBRH-27.) As part of this evaluation, Ashcraft requested "to get [a] workload more reasonable for
11 [one] person to do." (*Id*. At Ex. 12, p. WBRH-28.) By this time, Layton had knowledge of
12 Ashcraft's MS. The evaluation resulted in a salary increase. (*Id*. at Ex. 4, p. 134:19-25.)

13 Yet in August 2009, Ashcraft was reprimanded. The reprimand recited both Ashcraft's
14 continued untimely completion of assignments as well as her insubordination. (*Id*. at Ex. 13.)
15 Ashcraft responded to the reprimand with a written defense of her actions as well as complaints of
16 her own against Layton for a "belittling and condescending attitude." (*Id*. at Ex. 14, p. WBRH-
17 152.) Ashcraft's written defense did not raise the issue of disability discrimination.

18 The reprimand and Ashcraft's own complaints resulted in a meeting between Ashcraft and
19 Layton along with other hospital officials including the CEO. An extended portion of this
20 meeting–which was recorded and later transcribed–dealt with the personality conflicts between
21 Layton and Ashcraft. Ashcraft was given thirty days to improve her performance. (*See generally id*.
22 at Ex. 11A.) During this meeting, Ashcraft did not raise the issue of disability discrimination.

23 In December, Ashcraft requested a transfer from her position as Controller to a position as
24 accounting clerk. (*Id*. at Ex. 4, p. 144:10-12.) The latter job would relieve Ashcraft of her
25 managerial and supervisory responsibilities–and perhaps most importantly, it would put a few
26 layers of the corporate onion between Layton and her. She then asked to be transferred again to the

1  Information Technology ("IT") department, further still from Layton. The transfer to IT was
2  granted. (*Id*. at Ex. 4, pp. 151, 153.) Ashcraft justified neither transfer request by citing her MS.
3        Before the transfer to IT was effected, however, Layton fired Ashcraft. On April 6, 2010,
4  Layton asked Ashcraft to provide him with some information. Ashcraft told Layton that she could
5  show him how to retrieve the information himself. Layton told Ashcraft he didn't want to be
6  shown; he wanted her to get the information for him. Ashcraft responded, "Whatever," and then
7  she left the room. (*Id*. At Ex. 18.) During a follow-up meeting with Human Resources personnel
8  that same day, Ashcraft threatened litigation if she was fired. (*Id*. at Ex. 19.) The threat did not
9  mention disability discrimination.
10        Ashcraft was fired the next day. (*Id*. at Ex. 21.) Ashcraft's only remaining claim is for
11  disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §
12  12101 *et seq.* (Order on Stipulation #33.)

13  **II.    Legal Standard**

14        The repetitive appearance of "*Id.*" above reveals an important and, ultimately, dispositive
15  fact about this litigation: Ashcraft has failed to come forward with a single piece of authenticated
16  evidence in support of her opposition to summary judgment. Ashcraft's failure is fatal to her claim.

17      **A.  Motion for Summary Judgment**

18        Summary judgment is appropriate only when "the pleadings, depositions, answers to
19  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
20  genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of
21  law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together
22  with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable
23  to the party opposing the motion. *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475
24  U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1154
25  (9th Cir. 2001).
26  ///

3

1    The moving party bears the burden of informing the court of the basis for its motion, along
2 with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*,
3 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party
4 must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could
5 find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.
6 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

7    To successfully rebut a motion for summary judgment, the non-moving party must point to
8 facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson
9 School District No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect
10 the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
11 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment
12 is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material
13 fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for
14 the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of
15 evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute;
16 there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

17 **III.   Discussion**

18    **A.  Disability Discrimination under the ADA**

19    Under the ADA, covered employers are prohibited from discriminating against "a qualified
20 individual with a disability because of the disability." 42 U.S.C. § 12112(a).[2] The essential
21 elements of a claim for discrimination under the ADA include (1) that the plaintiff is disabled
22 within the meaning of the statute, (2) that the plaintiff is qualified, with or without reasonable
23 accommodation, to perform the essential functions of her job, and (3) that the plaintiff suffered an
24 adverse employment action because of her disability. *See Braunling v. Countrywide Home Loans*

---

[2] Ashcraft purports to sue under "Title VII," but all her discrimination claims stem from her disability. Therefore, the court construes these claims as arising under the ADA.

*Inc.*, 220 F.3d 1154, 1156 (9th Cir. 2000).

"Disability" is a term of art under the ADA. As relevant here, it embraces "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Under the 2008 amendments to the ADA, this definition is to be "construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). An impairment that flares up only occasionally–as MS is known to do–is a disability if "it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). The EEOC has specifically identified MS as an episodic impairment falling under the ADA's definition of "disability." 29 C.F.R. § 1630.2(j)(3)(iii).

Here, however, Ashcraft has provided no evidence that her MS "substantially limits a major life activity when active."[3] When asked during her deposition "Are there any activities that you are prevented from doing because of your disability?" Ashcraft responded, "No." (WPCHD's MSJ #50 at Ex. 6, p. 140:16-18.) Since the existence of a "disability" is a case-by-case determination, and since "disability" does not hinge on a diagnosis of impairment but rather the actual effect of that impairment, Ashcraft has not demonstrated a "genuine issue of material fact" as to her disability. *See* 29 C.F.R. § 1630(j).

Even assuming Ashcraft had provided evidence of impairment, Ashcraft has not pointed to any evidence that would allow a reasonable jury to conclude her termination was the result of disability discrimination. Ashcraft's only argument regarding causation is the following: "Because [WPCHD] insists on taking a position that [Ashcraft] continued to perform unsatisfactorily while arguing at the same time that the [termination] was based on her alleged insubordination, strongly suggests [sic] that [WPCHD] does not buy its own propaganda." (Ashcraft's Opposition #51, p. 9:8-11.) Yet WPCHD's rationale for firing Ashcraft has never wavered. WPCHD has presented evidence that Ashcraft was performing poorly, that this performance created tension with her supervisor Layton, and that this tension resulted in Ashcraft's insubordination. At no point does

---

[3] Indeed, she has not provided any evidence of her MS diagnosis.

5

Ashcraft challenge evidence of her poor performance. At no point does Ashcraft identify evidence suggesting the tension with Layton resulted from her disability. And at no point does Ashcraft deny her insubordinate behavior. Combined with Ashcraft's failure to raise her disability in any of her pre-termination protests, these evidentiary lacunae show there is no genuine issue of material fact as to whether WPCHD terminated Ashcraft because of her disability.[4]

### B. Rule 37 Sanctions Are Appropriate

At a May 25 hearing, the magistrate judge ordered Ashcraft to "cooperate in identifying, organizing, and producing all necessary responsive documents prior to the date of the completion of [her] deposition." (Minutes of Proceedings #41.) This hearing followed a discovery dispute involving Ashcraft's production of more than 700 unorganized and unlabeled pages to WPCHD. WPCHD's counsel requested that Ashcraft and her counsel specify which of the pages were relevant to Ashcraft's claims. (WPCHD's Motion to Dismiss for Failure to Comply with a Court Order #44, Ex. 2, pp. 2-3.) Ashcraft's counsel responded with page ranges that WPCHD's counsel still found unhelpful. (*Id.* at Ex. 2, p. 1.)

The May 25 hearing and order followed. However, Ashcraft did not provide any responsive documents prior to the completion of her deposition, despite repeated requests from WPCHD. (*See id.* at Exs. 4-5, 7.) (In fact, it appears that Ashcraft never supplemented her initial page ranges at all.[5]) The failure to produce responsive documents required at least two extra days for Ashcraft's deposition so that WPCHD could go through the documents with her.

///

---

[4] To the extent Ashcraft has alleged an unlawful retaliation claim under the ADA, this claim fails for similar reasons. Ashcraft has not made even a prima facie showing that her termination resulted from her engagement in an activity the ADA protects. *See Pardi v. Kaiser Foundation Hospitals*, 389 F.3d 840, 849 (9th Cir. 2004).

[5] Ashcraft's untimely response to WPCHD's Motion for Sanctions (over two weeks late) provides no good cause for its untimeliness. Therefore, the court does not consider it. *See* Local Rule 7-2.

Rule 37(b) of the Federal Rules of Civil Procedure provides that a court may award sanctions–ranging from payment of expenses to dismissal to contempt–for a party's failure to obey a discovery order. The sanction of dismissal is ordinarily limited to extreme circumstances involving willful disobedience or bad faith. *See In re Exxon Valdez*, 102 F.3d 429, 432 (9th Cir. 1996). An award of expenses and fees (including attorney's fees) must clear a lower bar: such awards are appropriate unless the disobedient party demonstrates that his or her "failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The court has broad discretion in crafting a sanction of expenses, though this sanction is intended to be primarily compensatory rather than punitive. *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986).

Here, Ashcraft has provided no substantial justification for her failure to comply with the magistrate judge's order. Indeed, the only proffered justification is Ashcraft's counsel's belief that his efforts in providing page ranges were sufficient. Since these efforts predate the magistrate judge's order, it is clear they were not. Therefore, sanctions in the form of reasonable expenses relating to the failure to comply with the court's order are appropriate. These sanctions are leveled against both Ashcraft and her counsel, James A. Boles, jointly and severally. *See Hyde & Drath v. Baker*, 24 F.3d 1162, 1172 (9th Cir. 1994) (noting that sanctions assessed jointly and severally against attorneys and their clients are appropriate).

**IV.   Conclusion**

IT IS THEREFORE ORDERED that WPCHD's Motion for Summary Judgment (#50) is GRANTED. The Clerk of Court is directed to enter judgment in favor of WPCHD.

IT IS FURTHER ORDERED that WPCHD's Motion to Dismiss for Failure to Comply with a Court Order (#44) is GRANTED in part and DENIED in part. Ashcraft and her counsel James A. Boles are jointly and severally liable for WPCHD's reasonable expenses relating to the Motion to

///

///

Dismiss for Failure to Comply with a Court Order, the July 16, 2012 deposition of Ashcraft, and the September 29, 2012 deposition of Ashcraft.

IT IS SO ORDERED.

DATED this 20th of February, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE